*B. B. Daily*, for the appellant.

May Term, 1861.

BRANHAM
v.
LANGE.

—————

BRANHAM *v.* LANGE, Auditor, &c.

The Legislature has the power to authorize a committee to sit in vacation.

The Legislature may prescribe rules as to the custody of the public moneys, and the granting of pardons, &c.

A membership in the committee authorized by the act entitled, "An act making general appropriations, &c., and providing for a committee to audit claims," &c., approved *May* 31, 1861, (Acts, Special Session, 1861, p. 3,) is not an office, within the meaning of the Constitution, but only a special appointment to perform a particular act of service.

The State Auditor has not, by virtue of the Constitution, a claim of right to the discharge of any given service.

A statute may be repealed by implication, and such repeal is not within Art. 4, § 21, of the Constitution.

May Term,
1861.

BRANHAM
v.
LANGE.

Thursday,
July 11.

The act of *May* 31, 1861, *supra*, does not deprive the auditor of any of his duties, but only prescribes how military claims must be certified, before he is authorized to issue a warrant for their payment.

APPEAL from the *Marion* Common Pleas.

PERKINS, J.—At the extra session of the Legislature of *Indiana*, in 1861, an act was passed, approved *May* 31, of said year, entitled " An act making additional appropriations, &c., and providing for a committee to audit claims upon said appropriation." Acts, Special Session, 1861, p. 3. The act, among other things, provides:

" SEC. I. *Be it enacted by the General Assembly of the State of Indiana*, That the sum of $1,000,000 be, and the same is hereby, appropriated to defray the expenses growing out of the insurrectionary condition of a portion of the *United States*, and in enlisting, maintaining and subsisting troops, and providing munitions of war, including, also, the expense of this session of the General Assembly."

" SEC. V. That there shall be appointed a committee, consisting of two members of the House and one of the Senate, to be denominated an Auditing Committee, whose duty it shall be to meet at *Indianapolis* monthly, and examine and audit the accounts of the Commissary General and Quartermaster General, and all other accounts, either for pay of men, or materials of any kind purchased and designed to be paid for out of the appropriation made in the first section of this act; and the Auditor of State is expressly prohibited from paying any claim of any description whatever, except for legislative expenses, out of the appropriation made in the first section of this act, until said claim has been audited and certified by said committee, or a majority of them."

" SEC. VI. Said committee shall have power to employ a clerk; they shall make out a regular balance sheet each month, which, together with the proper vouchers, shall be carefully preserved. They shall have power to direct the proper forms to be used for accounts and vouchers, and require all to be made in accordance with such forms.

" SEC. VII. They shall each receive the sum of three dollars per day, for each day they may be necessarily employed in

the discharge of their duties, and five cents per mile for the distance traveled in going to, and returning from, their attendance upon such duties, which, together with clerk hire, shall be paid out of the money appropriated in the first section of this act."

The committee provided for was appointed, and came to *Indianapolis* to enter upon the discharge of the duties assigned. The Auditor of State, Hon. *Albert Lange*, regarding the committee as an illegal body, refused to notice their action, and to issue warrants to them for their pay.

Hon. *David C. Branham*, a member of the committee, applied to the *Marion* Court of Common Pleas for a mandate upon the Auditor, commanding him to issue a warrant to said *Branham* for his compensation as a member of the committee above named. The Court refused the mandate, and *Branham* appealed.

The decision of the Court below is vindicated by the Auditor of State, upon the following grounds:

"1. The law creating the Auditing Committee is of no validity, because members of the General Assembly can not exercise any legislative functions when the General Assembly has, by adjournment, ceased to exist as a constituted and organized body. The ability of a legislative committee to transact business, ceases with the adjournment of the Legislature, *sine die*. The limbs of a body have neither the right nor the power to move, when the body is dead.

"2. The appointment of this Auditing Committee, composed as it is of members of the Legislature, is against Art. 3 of the Constitution of the State, in as much as the distribution of the powers of government is violated. If the General Assembly can safely appoint, out of their members, a committee for the settlement and the examination and allowance of claims, they can also arrogate to themselves the custody of the public money; the executive prerogative of granting pardons; and elaborate, for the judiciary, a set of rules to be observed by the Courts: all of which would lead to revolution and anarchy.

"3. The act in question conflicts with Art. 4, § 30, of the Constitution, in that it admits to a civil office of profit,

members of the General Assembly, during the term for which they have been elected. The Governor may, in his discretion, call a special session of the Legislature, in which all the members of both houses of the last General Assembly would take their seats.

"4. Under the act defining the powers and duties of the Auditor of State, (1 R. S., p. 146,) the said officer shall: '*First*. Keep and state all accounts between, &c., when the same are derivable from, or payable into, the State Treasury.' That provision is now the law, and in full force. If the law creating the Auditing Committee was intended to repeal it, it should have contained a provision to that effect. If it was intended to amend the statute law, it should have done it in the manner prescribed by the Constitution, by setting forth, at full length, the act or section to be amended. Art. 4, § 21 of the Constitution."

We will examine these points in their order:

1. It seems to be a rule of parliamentary law, that a legislative committee can not regularly sit in a vacation of the sitting of the legislative body, (Cush. Parl. Law, p. 738 and note); but yet Mr. *Cushing* says, on page 737, that "It is an expedient sometimes resorted to by committees, with a view to dispose of the business referred to them, to adjourn without day, or to a day beyond the session. This course, though irregular, as it is the duty of a committee to report, may, and commonly does, receive the sanction, or at least the acquiescence, of the house; otherwise, the committee may be directed by the house to re-assemble, and proceed with the business." The above is the parliamentary rule, we take it, where the Legislature has specially prescribed none upon the subject, or for the given occasion; but, to say that the Legislature has not power to authorize a committee to sit in vacation, is a proposition which the practice of the Legislature of this State, and of Congress, as well, we think, as the dictates of correct reason, contradicts.

2. What we shall say, bearing on the second point, will be included in the discussion of the fourth, except that we may remark here that the Legislature may prescribe rules as to the custody of the public money, (see the Embezzlement Law,) may

prescribe rules as to the granting of pardons, (*The State* v. Dunning, 9 Ind. 20,) and has "elaborated a set of rules to be observed by the Courts."

3. We do not think membership in this committee an office, within the meaning of the Constitution; but rather a special appointment to perform a particular act of service. The Legislature might have passed an act creating the office of Auditing Committee, prescribing its duties, and the mode of continuing it in active, permanent service, by the filling of vacancies that might happen, &c.; but it has not attempted thus to act. The Legislature appropriated a large sum of money upon a special, temporary occasion, not in accordance with the usual course of legislation, which was to be hurriedly expended. To supervise the expenditure of this particular, extraordinary appropriation, they appointed a temporary committee, and provided for paying its members while attending to that duty. It is a special service, not coming within the meaning of the term "office," as used in the Constitution. As an illustration: a Court may have power to appoint a commissioner, or auditor, as he is often called in the *English* practice, to be a permanent officer of the Court, or at least for a term of years, to whom shall be referred all accounts to be taken in pending suits, &c.; or, the Court may appoint some given individual to audit and state the account in a particular, pending suit. Now, in one case, the Court would appoint an officer, in the other it would not. Again, the law might provide for the appointment, by the Court, of a county arbitrator, to whom all causes should be referred for arbitration, &c., giving such person a salary, or fees in each case, for his compensation. Here, an office would be created; an officer might be appointed. But where the Court now appoints an arbitrator to hear a single case, an officer, within the meaning of the Constitution, is not appointed.

4. The Constitution of the State creates the office of State Auditor, but attaches to it no duties. The Auditor, then, has not, by virtue of the Constitution, a claim of right to the discharge of any given service. The Constitution says, he "shall perform such duties as may be enjoined by law." Art. 6, § 1. See *Jones* v. *Cavins*, 4 Ind. 305; Ind. Dig., p. 599.

May Term, 1861.

BRANHAM v. LANGE.

The Legislature, then, was not bound to give the Auditor any concern with the accounts of the expenditures of the war appropriation; and if the general law (1 R. S., p. 146) would have otherwise given him the auditing of them, still, if the act of 1861 assigned the duty to another, being the later law, it would repeal the former by implication; and such repeal is not within Art. 4, § 21, of the Constitution, as has been often decided. Ind. Dig., p. 750. But we do not understand the act in question to deprive the Auditor of any of his duties. He must still issue the warrants for payment of the war appropriation; but the act prescribes the manner in which accounts presented must be authenticated, or certified, before he can issue such warrant. It is analogous to the law for the settlement of the accounts of the clerk and sheriff of the Supreme Court; they must be examined and certified by the Court, before the Auditor can issue his warrant for their payment. 2 R. S., pp. 3, 5.

We can discover no ground on which the decision below can be sustained.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded for further proceedings.

*J. E. McDonald* and *A. L. Roache,* for the appellant.

*Albert Lange,* for the appellee.